IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–01390–KMT

ANGELA MAE JOLLIFF,

    Plaintiff,

v.

CAROLYN COLVIN, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

    This matter comes before the court on review of the Commissioner's denial of Plaintiff Angela Mae Jolliff's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("SSA"). (*See generally* Doc. No. 11, Social Security Administrative Record ["AR"].)

    Plaintiff filed her opening brief on September 18, 2017. (Doc. No. 15.) Defendant filed her response on October 16, 2017 (Doc. No. 16), and a reply was filed on October 30, 2017. (Doc. No. 17.) Jurisdiction is proper under 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff suffers from multiple mental impairments. The first of which is post-traumatic stress disorder ("PTSD"). To provide context, Plaintiff's father abandoned her family when she was two years old. (AR 433.) Plaintiff's mother was physically and mentally abusive. (AR 344.) In addition, boyfriends of Plaintiff's mother raped her. (AR 451.) Such horrific experiences manifested into PTSD by at least February 25, 2014; but given the nature of the condition, it is near impossible to delineate the precise onset date. (AR 302.) Plaintiff suffers from anxiety and trauma-related nightmares. (AR 351.) She sometimes cannot sleep without medication. She has an aversion to men. (AR 214, 324, 351.)

Plaintiff also suffers from bipolar disorder. In August 2013, she stayed awake for five straight days before having a psychotic episode and being hospitalized. (AR 350.) She was also having suicidal thoughts at that time. (AR 342.) On August 26, 2013, Plaintiff reported depression, "obsessive thoughts[,] and rumination." (AR 338.) On May 15, 2014, she reported rages that result in "self harming behaviors of cutting[.]" (AR 316.) On May 23, 2014, she reported fears regarding medication, death from panic attacks, and social rejection. (AR 314.) Three days later, Plaintiff presented "with high levels of distress causing marked interference in interpersonal relationships and daily functioning." (AR 312.) She lacks trust in others. (AR 336.)

Compounding Plaintiff's mental impairments is schizophrenia. She has a family history of the disease; both her father and her sister also suffer from it. (AR 432.) At the age of 11, Plaintiff had "visions of hell" and considered suicide. (AR.425.) On August 28, 2013, Plaintiff presented to the emergency room kicking, spitting, and unable to give a history of the events that

brought her there.[1] (AR 206.) She claimed that someone had put "counter curses" on her. (*Id.*) Her Global Assessment of Functioning ("GAF")[2] score at admission was extremely low—18. Her symptoms were so severe that she was isolated and placed in restraints. (AR 259.) Throughout 2014-2015, Plaintiff continued experiencing auditory hallucinations. (AR 335, 349.) She also reported that the medication (Zyprexa) caused her to have visual hallucinations in addition to her auditory hallucinations. (AR. 362.) On August 11, 2015, during a panic attack, Plaintiff suffered from auditory hallucinations instructing her to commit suicide.

## THE DECISION

The Administrative Law Judge ("ALJ") applied the five-step sequential evaluation process to determine that Plaintiff was not disabled.[3] (AR 11-22.) She found that that Plaintiff had severe impairments including bipolar disorder, schizophrenia, PTSD, and panic disorder (AR 13), but that her medical conditions did not meet or equal the criteria of the disabling impairments listed at 20 C.F.R. part 404, subpart P, appendix 1 ("Listings"). (AR 14-15.) The ALJ found that Plaintiff had the Residual Function Capacity ("RFC") to perform simple, repetitive, low-stress work that did not involve contact with the public and only limited contact

---

[1] As recognized by the ALJ, Plaintiff has required two further hospitalizations. (AR 16.)

[2] *See* Moos RH *et al*, *Global Assessment of Functioning (GAF) ratings: determinants and role as predictors of one-year treatment outcomes,* J Clin Psychol. 2000 Apr; 56(4):449-61.

[3] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)

with co-workers. (AR 15.) The ALJ then found at step five that Plaintiff could perform jobs existing in the national economy—concluding that she was not disabled under the SSA. (AR 22.)

**STANDARD OF REVIEW**

To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Review of the Commissioner's disability decision is limited to determining whether the ALJ (1) applied the correct legal standard, and (2) whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. Substantial evidence means "more than a mere scintilla," or such evidence as a "reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). And as the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

**ANALYSIS**

Plaintiff raises several issues for consideration, but what lies at the core of this appeal is (1) whether the ALJ improperly considered the opinion of Christina Pacheco, MA, LAC, NCC under the relevant SSA regulations, and (2) whether the ALJ improperly assessed Plaintiff's credibility in light of objective evidence and subjective allegations in the record.

Because the court finds for Plaintiff on issue (1), remand is warranted. Upon remand, however, and if Ms. Pacheco is afforded heightened weight, the ALJ will need to re-assess Plaintiff's credibility, the RFC determination and reconsider whether Plaintiff's disabilities meet or equal Listing 12.03 under SSA regulations.

**A. SSR 06-03p: Ms. Pacheco[4]**

Plaintiff challenges the ALJ's assessment of Ms. Pacheco's opinion—Plaintiff's therapist. Here, Plaintiff contends that although Ms. Pacheco is a non-acceptable medical source, she is still a source that must be weighed in accordance with the factors set out in SSR 06-03p, 71 Fed. Reg. 45,593, 45,595. Those factors are substantially the same as those in 20 C.F.R. § 416.927(c) (treating physician).[5]

---

[4] Christina Pacheco is a Licensed Professional Counselor. *See* Colorado Dept. of Regulatory Agencies, Division of Professions & Occupations, "Verify a Colorado Professional or Business License," available at https://apps.colorado.gov/dora/licensing/Lookup/LicenseLookup.aspx (last visited April 29, 2018).

[5] Notably, the multi-factor test in SSR 06-03p (non-acceptable medical source, such as a therapist) and step two of the treating physician framework is near identical. *See,* § 416.927(c) (acceptable medical sources such as a physician).

The ALJ stated that she considered the "treating physicians…[and[]] granted them limited weight." (AR 19.) Incorrectly, however, the ALJ also included Ms. Pacheco's opinion in this analysis—a treating therapist, not a treating physician. (AR 20). To the extent that there is any conflation in Plaintiff's brief regarding the weight afforded to Ms. Pacheco (a treating therapist),

Plaintiff contends that the ALJ failed to address the following factors when weighing Ms. Pacheco's opinion for the purpose of determining Plaintiff's mental limitations—including: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion." *See*, SSR 06-03p, 71 Fed. Reg. 45,593, 45,595.[6]

Tellingly, and relevant to this case, the above factors are set in the following context as expressly stated in SSR 06-03p:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, **and licensed clinical social workers**, have increasingly assumed a **greater percentage of the treatment and evaluation functions** previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. (emphasis added.)

While application (and explanation) of the each factors in SSR 06-03p is dependent on the facts of each case, the court finds that there is limited express reference to the factors in the

---

the court finds that it can be traced back to the ALJ's conflation—only reinforcing the need for remand. *Cf. Watkins v. Barnhart*, 1350 F.3d 1297, 1301 (10th Cir. 2003) (outlining the *Watkins* factors that are codified in § 416.927(c)).

[6] On pages 7-8 of Plaintiff's brief, Plaintiff acknowledged that Ms. Pacheco was a "not an acceptable medical source" and not entitled to "controlling weight" as is the case for treating physician opinions under § 416.927(c). Defendant's brief also acknowledges that SSR 06-03p is the correct standard.

ALJ's decision. Because of this, the court finds that the ALJ's first error is a legal one—*i.e.*, the ALJ failed to identify the correct legal framework and the relevant multifactor analysis as articulated in SSR 06-03p, constituting reversible error and remand. *See Wall*, 561 F.3d at, 1052.

More critically, the ALJ has failed to apply the factors in SSR 06-03p so to assign proper weight to Ms. Pacheco's opinion. For instance, there is no reference to (1) how long Plaintiff has been treated by Ms. Pacheco—being at least one year prior to issuing her opinion (AR 526-529), (2) the nature and extent of the relationship, despite detailed notes in her mental limitation report (AR 527-529), (3) the frequency that Ms. Pacheco treated Plaintiff, typically being a weekly appointment, (4) Ms. Pacheco's specialty as a licensed therapist, and (5) the degree that Ms. Pacheco's report was supported by other evidence in the record (being, for example, Plaintiff's hospitalizations) and ample other evidence demonstrating significant mental health symptoms supporting Ms. Pacheco's opinion.[7] (AR 316, 321, 336, 340, 343, 362, and 377.)

These are just some of the factors that should have been addressed before consigning Ms. Pacheco to "limited weight." (AR 20.) On remand, Ms. Pacheco's opinion should not be afforded such short shrift. Indeed, evidence from counselors can provide the most probative evidence on record. *See* SSR 06-03p ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.")

---

[7] Plaintiff has experienced these symptoms even while taking medication. (AR 415.)

**B. Assessing Plaintiff's Credibility**

Plaintiff challenges the ALJ's credibility assessment. In particular, SSR 96-7p requires an ALJ to make a determination regarding a claimant's credibility when pain or other symptoms are alleged to contribute to the claimant's disability:

> When the existence of a medically determinable physical or mental impairment(s) has been established, the intensity, persistence, and functionally limiting affects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p. The ruling further states:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his [ . . . ] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.[8]

*Id.*

---

[8] The SSA regulations lay out the criteria for an ALJ's discussion of a claimant's credibility:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual statements and the reasons for that weight.

SSR 96-7p.

8

The Tenth Circuit has further articulated the requirements for an adequate credibility determination. In determining a claimant's credibility, an ALJ must:

> …consider (1) whether [the c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairments and the [c]laimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling.

*Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Tenth Circuit has also articulated factors that may be used in assessing a claimant's credibility:

> Some of the possible factors include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132-33 (10th Cir. 1988). An ALJ must also consider the entire case record in making a credibility determination. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996). There, an ALJ based a credibility determination, in part, on the fact that the claimant's pension gave him an incentive not to work but ignored medical evidence of a somatoform disorder. The Tenth Circuit found that the ALJ's credibility determination was inadequate. *Id*. The court reasoned that "the ALJ's evaluation of plaintiff's subjective complaints was flawed by his . . . failure to consider . . . factors that were supported by the record." *Id.*

The ALJ held that there were a number of factors that led "to the conclusion" that Plaintiff is "less limited than alleged." (AR 17.) In short, the ALJ found that Plaintiff lacked credibility.

Plaintiff contends that the "ALJ's credibility determination is fatally flawed because the ALJ failed to consider all evidence in the case record." (Doc. No. 15 at 10.) The court disagrees. Provided that the proper legal application has been made, substantial evidence—being "more than a mere scintilla"—is all that is required to support an ALJ's finding. *Richardson*, 402 U.S. at 401. Regarding Plaintiff's credibility, the ALJ has supplied just this.

In applying each of the *Kepler* prongs, the court finds that the first is met.[9] That evidence is extensive and summarized at least, in part, on pages two and three of this Order—documenting Plaintiff's PTSD, bipolar disorder, and schizophrenia. Many of these conditions were also characterized as severe by the ALJ in the reasoning. (AR 13.)

While Plaintiff is successful on the first prong, it is the second and third prongs that pose problems. In short, the ALJ gave three reasons why Plaintiff's subjective allegations of disability were "less limited than alleged." (AR 17.) To truncate, the ALJ found that (1) Plaintiff's symptoms were sporadic, despite two hospitalizations and a GAF score as low as 18, (2) Plaintiff "only met with her psychiatrist sporadically and was not entirely consistent with the degree of symptomology alleged" and, (3) Plaintiff's daily activities were "not entirely consistent with the degree of anxiety and mental symptomology alleged." (AR. 19.) This evidence, *in toto*, constitutes substantial evidence to support the ALJ's reasoning on prongs two and three. *See Kepler*, 68 F.3d at 390.

---

[9] The first prong is modified somewhat in its application to a mental impairment. A hallucination, for example, is difficult to determine from a purely objective standpoint. Unlike a broken arm, which can be verified independently, a hallucination can only be assessed from the patient's perspective.

Because Plaintiff cannot, at least, meet these additional prongs of the *Kepler* test, and because there is a scintilla of evidence to support the ALJ's credibility finding, the court rejects Plaintiff's arguments to the contrary.[10]

### C. Harmless Error

Defendant tacitly raises the harmless error defense.[11] Defendant argues that the ALJ's deficiencies were not harmful because the deficiencies were not prejudicial to Plaintiff. The court, however, disagrees—particularly in light of the deficiencies that have been addressed above. One of the effects flowing from the deficiencies is that the RFC determination may require reformulation—*i.e.*, once Ms. Pacheco's opinion is re-assessed. This reformation may lead to a disability finding in favor of Plaintiff. Given the possibility of this alternative result on remand, the ALJ's errors are anything but harmless—and probably err towards the more significant end of the spectrum.

### D. Remaining Arguments

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the court finds that the ALJ's crediting of Ms. Pacheco was in error, which may impact the RFC determination on remand, *inter alia*, it need not address the other arguments raised by

---

[10] In finding for Defendant on this issue, the ALJ will need to be mindful on remand. If the ALJ affords Ms. Pacheo's opinion heightened weight beyond the weight that is currently assigned to her opinion, her evidence may have a bearing on Plaintiff's credibility—specifically, since Plaintiff saw Ms. Pacheco on a weekly basis (as addressed earlier in this Order), then such evidence would, seemingly, bolster Plaintiff's subjective allegations going to her mental impairments.

[11] Courts apply harmless error cautiously in the administrative review setting. *See Fischer–Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). An error is only harmless when the court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34.

Plaintiff—ever more so where the Defendant's harmless error argument has been rejected. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

To be sure, however, the court expresses no opinion as to Plaintiff's other arguments and neither party should take the court's silence as tacit approval or disapproval of how the evidence was considered. The court does not intend by this opinion to suggest the result that should be reached on remand; rather, the court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 8th day of May, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge